1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DANNETTE F. PAFFHAUSEN,                    )    No. 2:14-CV-0314-LRS
                                           )
                    Plaintiff,             )    **ORDER GRANTING**
                                           )    **DEFENDANT'S MOTION FOR**
        vs.                                )    **JUDGMENT,** *INTER ALIA*
                                           )
CAROLYN W. COLVIN,                         )
Acting Commissioner of Social              )
Security,                                  )
                                           )
                    Defendant.             )
_____           )

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment
(ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 15).

**JURISDICTION**

Dannette F. Paffhausen, Plaintiff, applied for Title XVI Supplemental Security
Income benefits (SSI) on April 18, 2011. The application was denied initially and on
reconsideration. Plaintiff timely requested a hearing and one was held on January 8,
2013, before Administrative Law Judge (ALJ) James W. Sherry. Plaintiff,
represented by counsel, testified at this hearing. Daniel Wiseman, M.D., and
Margaret R. Moore, Ph.D., testified as medical experts. Diane Kramer testified as a
Vocational Expert (VE). On February 7, 2013, the ALJ issued a decision finding the
Plaintiff not disabled and denying her benefits. The Appeals Council denied a
request for review and the ALJ's decision became the final decision of the
///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

Commissioner.  This decision is appealable to district court pursuant to 42 U.S.C. §1383(c)(3).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. Plaintiff has a GED (General Education Development) and past relevant work experience as a teacher's aide, housekeeper and hotel clerk. Plaintiff was 48 years old at the time of the administrative hearing.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational

///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

1  interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749
2  F.2d 577, 579 (9th Cir. 1984).

3       A decision supported by substantial evidence will still be set aside if the proper
4  legal standards were not applied in weighing the evidence and making the decision.
5  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir.
6  1987).

7                                   **ISSUES**

8       Plaintiff argues the ALJ  erred in not finding Plaintiff disabled by: 1)
9  improperly discounting the opinions of her treating and examining physicians, and
10  2) improperly discounting Plaintiff's credibility regarding her physical and mental
11  limitations.

12

13                                **DISCUSSION**
14  **SEQUENTIAL EVALUATION PROCESS**

15       The Social Security Act defines "disability" as the "inability to engage in any
16  substantial gainful activity by reason of any medically determinable physical or
17  mental impairment which can be expected to result in death or which has lasted or can
18  be expected to last for a continuous period of not less than twelve months."  42
19  U.S.C. § 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined
20  to be under a disability only if her impairments are of such severity that the claimant
21  is not only unable to do her previous work but cannot, considering her age, education
22  and work experiences, engage in any other substantial gainful work which exists in
23  the national economy. *Id*.

24       The Commissioner has established a five-step sequential evaluation process for
25  determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*,
26  482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987).  Step one determines if she is engaged
27  in substantial gainful activities.  If she is, benefits are denied.  20 C.F.R. §
28  416.920(a)(4)(i).  If she is not, the decision-maker proceeds to step two, which

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found that: 1) Plaintiff has severe impairments, including "degenerative disc disease- cervical, thoracic, and lumbar spine;" "degenerative joint

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 4**

disease- right knee;" obesity; depressive disorder NOS (not otherwise specified); and anxiety disorder NOS; 2) Plaintiff does not have an impairment or combination of impairments that meet or equal any of the impairments listed in  20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform work that does not involve lifting or carrying more than a maximum of ten pounds at a time; standing and/or walking for more than a total of two hours in an eight-hour workday; sitting for more than six hours in an eight-hour workday; she can occasionally lift and carry articles such as docket files, ledgers, and small tools; she can occasionally to frequently push and/or pull within the sedentary lifting restrictions; she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but can never climb ladders, ropes, or scaffolds; she should avoid concentrated exposure to unprotected heights, moving machinery, and excessive vibration; she can perform simple one to three-step, routine, and repetitive tasks as well as some well-learned, detailed tasks; and she should avoid all interaction with the general public, but can have brief, superficial interaction with co-workers and supervisors; and 4) while this RFC precludes Plaintiff from performing her past relevant work, it does not preclude her from performing other jobs existing in significant numbers in the national economy as identified by the VE, including printed circuit board assembly, charge account clerk, and surveillance system monitor.  Accordingly, the ALJ found the Plaintiff is not disabled.

**MEDICAL SOURCE OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. *Benecke v. Barnhart,* 379 F.3d 587, 592  (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *Lester  v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996);  *Smolen v. Chater,* 80 F.3d 1273,

1   1285-88 (9ᵗʰ Cir. 1996); *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d

2   1453, 1463 (9ᵗʰ Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604-05 (9ᵗʰ Cir. 1989).  If

3   the treating or examining physician's or psychologist's opinion is not contradicted,

4   it can be rejected only for clear and convincing reasons.  *Lester,* 81 F.3d at 830. If

5   contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are

6   supported by substantial evidence are given. *See Flaten*, 44 F.3d at 1463; *Fair*, 885

7   F.2d at 605.  "[W]hen evaluating conflicting medical opinions, an ALJ need not

8   accept  the opinion of a doctor if that opinion is brief, conclusory, and inadequately

9   supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.

10  2005).   The opinion of a non-examining medical advisor/expert need not be

11  discounted and may serve as substantial evidence when it is supported by other

12  evidence in the record and consistent with the other evidence. *Andrews v. Shalala*,

13  53 F.3d 1035, 1041 (9th Cir. 1995).

14

15        **1.  Physical RFC**

16        Plaintiff's physician in Chewelah, Washington, Thomas J. Boone, M.D.,

17  completed a State of Washington Department of Social and Health Services (DSHS)

18  "Functional Assessment" in April 2011, in connection with Plaintiff's application for

19  state disability benefits.   Dr. Boone checked boxes indicating Plaintiff's work

20  function was impaired, that her condition was expected to impair her work function

21  for 12 months, that her condition was deteriorating, that she could stand for two hours

22  in an eight hour work day, that she could sit for four hours in an eight hour work day,

23  that she could lift ten pounds occasionally, that she could lift ten pounds frequently,

24  and that she had postural restrictions necessitating frequent changes in position. (Tr.

25  at pp. 232-33).

26  ///

27  ///

28  ///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

1    Dr. Boone performed a physical examination of the Plaintiff in conjunction

2    with the DSHS "Functional Assessment."  Dr. Boone wrote that:

3        She does have chronic pain in her neck and back.  This is
         moderate, constant, aching.  She has had an MRI of the
4        cervical spine which reveals a broad-based disk protrusion
         at L5-6, spinal stenosis and disk at C6-7 [sic].  Her middle back
5        and low back does have a lot of arthritic changes and bulging
         disks.  Her right knee is very sore at this time.  It gives out
6        and is tender.  She did have an ACL repair several years
         ago.  It has swelling.
7
8    (Tr. at p. 240).  Dr. Boone's assessment was "[s]evere arthritis of the neck and back;

9    arthritis of the knee, question instability ligamentous damage."  (*Id*.).

10   A physical examination note from Dr. Boone, presumably from December

11   2011, indicated Plaintiff was "very functional on meds."  (Tr. at p. 291).  In February

12   2012, Dr. Boone wrote:

13       The patient is still having her symptoms.  The neck and
         back are very severe.  She does have a protrusion of the
14       disk at L5-6, stenosis at L6-7.  Her knee MRI recently
         did reveal total rupture of her [ACL] graft.[1]  The knee is
15       popping, catching, giving out.  She has decreased motion
         in her back and tenderness with spasm.

16   (Tr. at p. 298).  He once again assessed "[a]rthritis of the neck and back, lumbar and

17   T-spine, arthritis of the knee with instability."  (*Id*.).  And on this occasion, he opined

18   that "[p]atient is really unable to work at this time."  (*Id*.).  In March 2012, however,

19   Dr. Boone once again indicated that Plaintiff was "[v]ery functional on meds."  (Tr.

20   at p. 310).

21   In a July 2012 "Opioid Progress Report," Plaintiff indicated her pain in the

22   past week had been a "6" on a 1 to 10 scale.  (Tr. at p. 319).  Dr. Boone estimated that

23   Plaintiff's function on opioids rated an "8" on a 1 to 10 scale.  (*Id*.).  Plaintiff

24   indicated the activities she could do better with pain medication included sitting,

25   standing, walking, exercise and housework.  (*Id*.).  In a November 2012 "Opioid

26   ///

27

28   [1] This graft occurred in 1991.  (Tr. at pp. 307-08).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

1    Progress Report," Dr. Boone estimated that Plaintiff's function on opioids had
2    increased to a "9." (Tr. at p. 328).

3        In his decision, the ALJ assigned "some weight" to Dr. Boone's opinion about
4    Plaintiff's functional limitations "as portions of it are consistent with other accepted
5    medical source opinions, but no other medical source opined that she would be unable
6    to sit for six hours or would need frequent position changes." (Tr. at p. 19). The ALJ
7    assigned no weight to Dr. Boone's conclusion that Plaintiff "was really unable to
8    work this time," asserting that the March, July and November 2012 reports, discussed
9    above, were contrary to that conclusion. (Tr. at p. 20).

10       The physical RFC found by the ALJ is not severely at odds with the functional
11   limitations opined by Dr. Boone in 2011. To the extent it is inconsistent, however,
12   Dr. Boone's  reports from 2012, and the Plaintiff's self-reports of her daily living
13   activities (discussed *infra*), support the physical RFC determined by the ALJ. These
14   reports and Plaintiff's daily living activities constitute "specific and legitimate"
15   reasons for the ALJ to not give full weight to Dr. Boone's opinions and for the ALJ
16   to rely on the testimony of medical expert, Dr. Wiseman, and state agency medical
17   consultant, Jeffrey Merrill, M.D.. (Tr. at p. 20). Substantial evidence supports the
18   ALJ's physical RFC determination.[2]
19   ///
20   ///

21

22       [2] It is unnecessary to discuss whether the ALJ legitimately discounted Dr.
23   Boone's opinions because there purportedly is no objective evidence of Plaintiff
24   having "severe arthritis" in the spine and because of his mistaken reference to
25   Plaintiff's disc protrusion and stenosis being in her lumbar spine, as opposed to
26   her cervical spine. (Tr. at pp. 19-20). It is noted, however, that Plaintiff does not
27   dispute the ALJ's conclusion that there is no objective evidence of arthritis in her
28   spine.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

1

## 2. Mental RFC

2    Plaintiff was referred by her attorney to John Arnold, Ph.D., for a psychological

3    assessment in January 2013.[3]   Dr. Arnold diagnosed the Plaintiff with "Major

4    Depression, Recurrent, Moderate to Severe," and "Antisocial Personality with

5    Aggressive & Schizoid Features." (Tr. at p. 332).  He assigned the Plaintiff a current

6    Global Assessment Functioning (GAF) Score of 52 and indicated in the past year it

7    had been as high as 54.  (*Id.*).  A GAF score between 51 and 60 indicates "moderate

8    symptoms" or "moderate" difficulty in social, occupational, or school functioning.

9    *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*,

10   (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34).

11   In an accompanying "Mental Medical Source Statement," Dr. Arnold checked

12   boxes indicating Plaintiff was moderately limited ("occasional interference") in

13   abilities to remember locations and work-like procedures; understand and remember

14   detailed instructions; perform activities within a schedule, maintain regular

15   attendance, and be punctual within customary tolerances; and in getting along with

16   co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr.

17   at p. 333-34).  Dr. Arnold indicated Plaintiff was markedly limited ("frequent

18   interference") in her abilities to complete a normal workday and workweek without

19   interruptions from psychologically based symptoms and perform at a consistent pace

20   without an unreasonable number and length of rest periods; accept instructions and

21   respond appropriately to criticism from supervisors; and maintain socially appropriate

22   behavior and adhere to basic standards of neatness and cleanliness. (Tr. at p. 334).

23   Previously, in October 2011, Plaintiff had been referred by Washington's

24   Division of Disability Determination Services for a psychological examination by

25   Renee Thompson, Psy. D..  Dr. Thompson diagnosed Plaintiff with depressive

26

27   [3] Dr. Arnold's report indicates the date of the assessment was "01/02/2012,"

28   but "01/04/13" was the date he used on his "Mental Medical Source Statement."

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

disorder NOS (not otherwise specified) and anxiety disorder NOS.  (Tr. at p. 276).

Dr. Thompson assigned the Plaintiff a GAF of 43 because of "[s]erious symptoms;

suicidal ideation; serious impairment in social and occupational functioning."[4]  (Tr.

at p. 277).  Dr. Thompson's prognosis for the Plaintiff was "mixed."  According to

the doctor, Plaintiff's depressive and anxiety symptoms "likely interfere with her

ability to sustain gainful employment" and "may also be related [to] physical

problems that significantly limit her ability to work and function on a day-to-day

basis." (*Id*.).  Dr. Thompson noted that Plaintiff had a "minimal history of mental

health treatment." (*Id*.).  Furthermore, according to the doctor:

> [Plaintiff] does not exhibit consistent memory deficits.
> She is capable of understanding and remembering, but
> may have difficulty carrying out simple work related
> instructions due to pain.  She would have difficulty interacting
> in a work setting with coworkers and supervisors given her
> dysphoric presentation.

(*Id*.).

At the administrative hearing, Dr. Moore noted that Plaintiff had not received

any mental health treatment, including any antidepressant medication. (Tr. at p. 44).

Dr. Moore opined that Dr. Arnold's evaluation was "a very heavy-handed evaluation"

because  Plaintiff did not present specific mental health concerns to him. (Tr. at p.

45).  Indeed, according to Dr. Arnold's report, Plaintiff "did not cite specific mental

health problems as directly impacting her ability to be employed in major

ways . . . ." (Tr. at p. 329).  Dr. Moore also opined that Dr. Arnold's diagnosis of

major depression, moderate to severe, was not warranted: "I honestly did not see that

level of intensity in terms of a depression diagnosis reflected either in his evaluation

or in the record as a whole, especially with no treatment, no medication, no nothing."

---

[4] A GAF score of 41-50 means "serious" symptoms or "serious" impairment

in either social, occupational, or school functioning. *American Psychiatric Ass'n,*

*Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision

2000)(DSM-IV-TR).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

1    (*Id*.).  Dr. Moore also took issue with Dr. Arnold's diagnosis of a "full-blown"

2    antisocial personality disorder with aggressive and schizoid features.  Dr. Moore did

3    not "see that emerging from the interview nor the rest of the record." (Tr. at pp. 45-

4    46.).  Dr. Moore opined that "what we have is lower-grade anxiety, depression, some

5    of it situationally based, some of it tied to her physical limitations, her living

6    circumstances." (Tr. at p. 46).  Dr. Moore indicated that in terms of functional

7    limitations, she concurred with the state assessment that Plaintiff should be "able to

8    understand, remember, and carry out simple, routine, repetitive tasks up to three steps

9    and some well-learned detailed tasks, no public interaction, and only brief superficial

10   interaction with coworker and supervisors." (Tr. at pp. 48-49; 92-94).

11        The ALJ assigned "great weight" to Dr. Moore's testimony because of "her

12   review of all the medical evidence and its consistency with that evidence." (Tr. at pp.

13   21-22).  According to the ALJ: "The claimant's self-reports indicate that she is

14   socially competent and can follow written and spoken instructions well, and her

15   failure to obtain treatment for her alleged symptoms suggests that they were not

16   especially troubling." (Tr. at p. 22).  As discussed *infra*, the court concludes the ALJ

17   offered clear and convincing reasons supported by substantial evidence to discount

18   Plaintiff's credibility regarding the severity of both her physical and mental

19   limitations.  Because of that, the court concludes the ALJ provided specific and

20   legitimate reasons for relying on Dr. Moore's opinions, as opposed to Dr. Arnold's

21   opinions.  Interestingly enough, although Dr. Thompson opined a much more severe

22   GAF score (43) than Dr. Arnold (52), the limitations opined by Dr. Thompson appear

23   to be largely consistent with the mental RFC determined by the ALJ and which is

24   based on the testimony from Dr. Moore.  Also interesting is that although Dr.

25   Thompson assessed a much more severe GAF score , she diagnosed the Plaintiff with

26   depressive disorder NOS and anxiety disorder NOS, whereas Dr. Arnold offered the

27   more severe diagnoses of "Major Depression, Recurrent, Moderate to Severe" and

28   "Antisocial Personality with Aggressive & Schizoid Features."  Therefore, it is

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

1    understandable that the ALJ sought testimony from Dr. Moore to assist him in

2    interpreting the opinions of Drs. Thompson and Arnold.

3        Dr. Moore's opinion is supported by other evidence in the record and

4    consistent with the other evidence (i.e, Dr. Thompson's assessment). Therefore, the

5    ALJ was entitled to rely on it as substantial evidence in support of his mental RFC

6    determination.

7

8    **CREDIBILITY**

9        An ALJ can only reject a plaintiff's statement about limitations based upon a

10   finding of "affirmative evidence" of malingering or "expressing clear and convincing

11   reasons" for doing so.  *Smolen,* 80 F.3d at 1283-84.  "In assessing the claimant's

12   credibility, the ALJ may use ordinary techniques of credibility evaluation, such as

13   considering the claimant's reputation for truthfulness and any inconsistent statements

14   in her testimony."  *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  See

15   also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002)(following factors may be

16   considered:  1) claimant's reputation for truthfulness;  2) inconsistencies in the

17   claimant's testimony or between her testimony and her conduct; 3) claimant's daily

18   living activities; 4) claimant's work record; and 5) testimony from physicians or third

19   parties concerning the nature, severity, and effect of claimant's condition).

20       Contrary to Plaintiff's assertion, the ALJ did not discount Plaintiff's credibility

21   regarding her physical imitations solely on the grounds of lack of objective medical

22   evidence.  The ALJ referred to Plaintiff's self-report of her daily living activities (Tr.

23   at p. 20) which he found consistent with the opinions offered by Dr. Wiseman who

24   testified as a medical expert.  According to the ALJ:

25                    In activities of daily living, the claimant has no restriction.
                      The claimant stated in her Function Report that she lives
26                    alone, vacuums twice a week, washes dishes, prepares meals
                      daily, does laundry once a week, cleans the house every day,
27                    and has no problems with personal care [citation omitted].
                      She also reported that she shops in stores twice a month,
28                    watches television, reads, and can handle her funds

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

> [citation omitted].  The claimant informed Renee Thompson, Psy. D., that she is able to cook any meal, completes basic activities of daily living in a timely manner, and uses a computer for Facebook and games.  She also informed John Arnold, Ph.D., that she can care for her personal hygiene independently . . . . [citation omitted].

(Tr. at p. 16).[5]

The ALJ also considered those daily living activities as a basis for discounting Plaintiff's credibility regarding mental limitations:  "The claimant stated in her Function Report that she is able to leave her house by herself, shop in stores, and visit with others on the telephone or in person [citation omitted]." (Tr. at p. 16).  As noted above, the ALJ added that: "The claimant's self-reports indicate that she is socially competent and can follow written and spoken instructions well, and her failure to obtain treatment for her alleged symptoms suggest that they were not especially troubling."  (Tr. at p. 22).  The ALJ relied on Plaintiff's self-reports as a basis for assigning great weight to the opinions of medical expert, Dr. Moore, and in turn, for the mental RFC determination which he (the ALJ) made.[6]

The daily living activities reported by Plaintiff are consistent with the physical and mental limitations found by the ALJ as part of his RFC determination.[7]  This, by

_____

[5] In her report, Dr. Thompson wrote: "[Plaintiff] performs chores in a timely manner with breaks as needed for pain," and "[s]he is able to provide for her own personal needs and completes basic ADL[s] [Activities of Daily Living] in a timely manner."  (Tr. at p. 276).

[6] Dr. Moore testified that as concerns Plaintiff's mental health, she (Dr. Moore) did not ascertain there being any impact on Plaintiff's daily living activities.  (Tr. at p. 48).

[7] Contrary to Plaintiff's assertion, the ALJ did not discuss daily living activities solely in the context of his Step Three analysis.  Those activities and Plaintiff's credibility were discussed in the ALJ's RFC analysis (Tr. at pp. 19-20 re physical RFC and Tr. at pp. 20-22 re mental RFC).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

itself, is a clear and convincing reason to discount any more serious limitations asserted by Plaintiff.  See *Reddick*, 157 F.3d at 722.

Plaintiff apparently did not seek any type of mental health treatment after her evaluation by Dr. Thompson in October 2011, and before seeing Dr. Arnold in January 2013.  Because there is no indication that Dr. Thompson or any other medical provider specifically indicated to Plaintiff that she should seek mental health treatment, or specifically referred her to someone for that purpose, that is not a "clear and convincing reason" for discounting Plaintiff's credibility.  The mere fact  Dr. Thompson diagnosed Plaintiff with mental conditions is an inadequate reason  to discount her credibility for failure to subsequently seek mental health treatment.  Plaintiff did not fail to follow a recommended course of mental health treatment.  Compare *Bondarenko v. Colvin*, 2014 WL 4198853 (E.D. Wash. 2014) at *4 ("Plaintiff failed to follow medical advice, comply with her prescription medication regime, and to seek treatment on a regular basis"); *Hunt v. Colvin*, 954 F.Supp.2d 1181, 1191 (W.D. Wash. 2013)("Plaintiff . . . sought treatment but refused recommended medications and canceled a number of counseling appointments, which reasonably suggests that her symptoms were not as severe as alleged"); *King v. Astrue*, 2010 WL 5300856 (E.D. Cal. 2010) at *10 (Plaintiff ignored repeated advice of primary care physician to seek specific mental health treatment); *Parks v. Astrue*, 2010 WL 424609 (E.D. Wash. 2010) at *8 (distinguishing *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996), because "[p]laintiff's repeated failure to keep mental health appointments after referral by her treating physician is probative of the lack of severity of the condition, as is plaintiff's medication history"); and *Beasley v. Astrue*, 2010 WL 4717108 (E.D. Wash. 2010) at *5 ("Unlike the claimant in *Nguyen*, Plaintiff was aware of the diagnosed mental illness as early as 2007, but did not follow Dr. Mabee's recommendations for treatment in 2007 or 2008").  Here, it is not clear that Plaintiff was even made aware that Dr. Thompson diagnosed her with depressive and anxiety disorders.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

1

**CONCLUSION**

2      Substantial evidence- more than a scintilla, less than a preponderance- supports

3 the ALJ's RFC determinations and his conclusion that Plaintiff is not disabled.

4      Defendant's Motion For Summary Judgment (ECF No. 15) is **GRANTED**

5 and Plaintiff's Motion For Summary Judgment (ECF No. 14) is **DENIED**.  The

6 Commissioner's decision denying benefits is **AFFIRMED**.

7      **IT IS SO ORDERED.**    The District Executive shall enter judgment

8 accordingly and forward copies of the judgment and this order to counsel of record.

9      **DATED** this ___16th___ of July, 2015.

10

11                           *s/Lonny R. Suko*

12                      LONNY R. SUKO
                   Senior United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 15**